# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **SALVADOR SANCHEZ,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **No. 1-22-CV-01197-DII** |
| | § | |
| **BRYAN THOMAS, et al.,** | § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE DISTRICT JUDGE

Before the Court is Plaintiff Salvador Sanchez's motion for sanctions regarding the spoliation of evidence, Dkt. 94. After reviewing these filings and the relevant case law, as well as holding a hearing on the motion, the undersigned recommends that the District Court grant the motion.

## I.      BACKGROUND

Plaintiff Salvador Sanchez, a pretrial detainee at the Hays County Jail, initiated this lawsuit based on the alleged use of excessive force against Sanchez by defendant Bryan Thomas, an employee of Hays County, as well as two other corrections officers. Dkts. 1; 49, at 1, 2-4. Sanchez alleges that after he missed dinner, he stuck his hand out of the food slot of his temporary cell to request a meal. Dkt. 49, at 3. In response, Thomas allegedly refused to provide Sanchez with any food, instead using his foot to smash Sanchez's outreached hand so hard that Sanchez "yelled in pain." *Id.* Two other jailers, defendants Alec Moreno and Taylor Nethercutt, then

1

allegedly helped Thomas close the food slot on Sanchez's hand while Thomas continued to apply force with his foot. *Id.* As a result of this incident, Sanchez states his hand is permanently disfigured such that he will be unable to continue his work in construction and restaurants once he is no longer detained. *Id.* at 3-4.

After the incident, Sanchez filed an untimely inmate grievance with Hays County, alleging that the guards had subjected Sanchez to a criminal act that violated his civil rights and complaining of nerve damage to his hand. Dkt. 93-1, at 40. In response, Corporal Jacob Wardlow—the jail employee responsible for investigating inmate grievances—decided not to preserve any footage of the incident because he believed Sanchez's grievance to be "medical" in nature and was not related to any use of force. *Id.* at 68, 70. At the time Sanchez filed his first grievance, all footage of the incident was available. Dkts. 97-3; 97-4. Sanchez later filed a second grievance, in which he once again described the guards' use of force against him as criminal and in violation of his civil rights, and he asked officers to review the video footage of the incident. *Id.* at 55. At this time, the fixed-camera footage of the incident had already been deleted pursuant to Hays County's data-retention policy, though body-worn camera footage was still intact. Dkt. 97-4.

When the Hays County Jail declined to conduct any investigation into the grievances, Sanchez sent a letter to the Texas Commission on Jail Standards, again recounting the incident and asking officials to review the footage of the incident. *Id.* at 107-09. Hays County ultimately allowed all footage of the incident to be deleted pursuant to its data-retention policies for fixed-camera and body-worn camera videos,

yet preserved footage of Sanchez receiving medical care based on an unrelated injury that occurred hours before the incident. Dkts. 93-1, at 15; 94, at 4; 97, at 9; 97-7. Hays County's 30(b)(6) witness, however, testified that both of Sanchez's grievances should have precipitated a formal investigation into the allegedly illegal use of force—which would have triggered the preservation of the video footage. Dkt. 93-1, at 120.

Sanchez filed a motion for sanctions based on Hays County's alleged spoliation of the video evidence of the incident forming the basis of this lawsuit. Dkt. 94. Defendants Hays County, Thomas, Moreno, Nethercutt, Shawne, Wahlert, and Villalpando (collectively, "Defendants") filed a response, arguing that sanctions are not appropriate because it was unclear that Defendants had a duty to preserve the video footage and that Defendants did not act with intent to deprive Sanchez of that evidence such that severe sanctions are not warranted. *See* Dkt. 97. The undersigned held a hearing on Sanchez's motion. Dkt. 143.

## II.    DISCUSSION

Under Rule 37(e), a court may order sanctions against a party that fails "to take reasonable steps to preserve" electronically stored information "that should have been preserved in the anticipation or conduct of litigation" and "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). Upon a finding of prejudice to a party resulting "from the loss of the information," the court may order "measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). If the court additionally finds that the party responsible for the lost information "acted with intent to deprive another party of the information's use," the court may

order more severe remedies, including a presumption that the information lost was unfavorable to the party at fault, a jury instruction to the same effect, or enter default judgment against the party at fault. Fed. R. Civ. P. 37(e)(2).

## A.   Spoliation

The parties agree that Defendants failed to preserve the video footage, and as such, it cannot be restored or replaced. Dkts. 94, at 7-11; 97, at 4-5. The parties also appear to agree that the loss of this evidence prejudices Sanchez[1]—though Defendants insist that it also prejudices them because "questions of fact may preclude a determination of whether the forced used was reasonable under the circumstances." Dkt. 97, at 10. This dispute thus centers upon whether Hays County had a duty to preserve the video footage, and—for the purposes of determining whether certain of Sanchez's requested sanctions are warranted—whether Hays County allowed the footage to be deleted with intent to deprive Sanchez of that evidence.

Sanchez insists that Hays County had a duty to preserve the evidence of the incident from the moment Thomas allegedly attacked Sanchez, as well as based on the grievances Sanchez filed claiming that he was assaulted by multiple jail employees. Dkt. 94, at 8-11. Defendants respond that they did not have a duty to preserve the video footage since Thomas contends that he only used "soft-open hand control" on Sanchez in response to Sanchez's request for a meal. Dkts. 97, at 5; 97-1,

---

[1] Even in the face of potential prejudice to Defendants, the prejudice to Sanchez here is only heightened by the fact that the lost evidence was video footage that could have served as "an objective witness that bore neither the potential pro-defense leanings of the defense witnesses nor the credibility problems of [Sanchez, a former inmate]." *Pettit v. Smith*, 45 F. Supp. 3d 1099, 1111 (D. Ariz. 2014) (finding plaintiff to have been "clearly" prejudiced by loss of "objective evidence" that was "highly relevant to the claims at issue in [that] case").

at 85, 98. Defendants further argue that Sanchez's initial complaint was perceived by the jailers to be a "medical grievance" that identified May 29, 2021, instead of May 30, 2021, as the pertinent date[2] and listed the wrong temporary cell for where Sanchez had been placed that evening. Dkts. 93-1, at 20; 97, at 5. By the time Sanchez filed his second grievance, which included the same error in the date and one-digit error in his cell number, the fixed-video recordings of the incident had already been deleted. Dkts. 93-1, at 20; 97, at 6-7; 97-3; 97-4. Even though Sanchez's second grievance requested that officers review the video footage, Defendants assert that it would have been "difficult" for them to do so—even though the body-camera footage still existed at this point. Dkt. 97, at 7.

A party to litigation has a duty to preserve evidence "when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015). The duty to preserve relevant evidence includes the preservation of evidence "in the anticipation … of litigation[.]" Fed. R. Civ. P 37(e); *see also Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010) ("The duty to preserve arises when a party …  should have known that the evidence may be relevant to future litigation." (internal quotations omitted)). When litigation becomes reasonably foreseeable "is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances

---

[2] The alleged assault occurred between 2:00 and 3:00 a.m. on May 30, 2021. Dkts. 93-1, at 40; 97, at 9.

would have reasonably foreseen litigation." *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011).

Here, Sanchez's grievances put Defendants on notice of the need to preserve evidence in anticipation of potential litigation regarding the alleged assault. Courts in this Circuit have found that an inmate's filing of a grievance, similar to those at issue, triggers the duty to preserve evidence. *See, e.g.*, *Disedare v. Brumfield*, No. CV 22-2680, 2024 WL 1526699, at *8 (E.D. La. Apr. 9, 2024) ("Plaintiff's [grievance] was sufficient to put the Defendants on notice of potential litigation and on notice that the body scans and video footage at issue should be preserved."); *Falkins v. Goings*, No. CV 21-1749, 2022 WL 17414295, at *4 (E.D. La. Dec. 5, 2022) ("The video should have been preserved because the [grievance] put Defendants on notice that the video was relevant to litigation[.]").

Sanchez's first grievance stated that the guards acted in a prohibited manner, subjected him to a criminal act, and violated his civil rights, allegations that clearly point to a potential for future litigation. Dkt. 93-1, at 40. Sanchez's second grievance reiterated the same allegations and even requested that the officers review the video footage—once again putting the County on notice of the potential for future litigation regarding the incident. *See* Dkt. 93-1, at 40 (alleging that Thomas tased Sanchez's arm and other officers "shut the slot on my hand smashing it while Thomas used his foot to force more weight on my smashed hand"), 55 ("My hand was smashed by several officers."); *Evans v. Gallinger*, No. 18-CV-194-WMC, 2020 WL 1984298, at *1 (W.D. Wis. Apr. 27, 2020) ("[G]iven that inmate complaints are a required first step

for inmates to pursue a claim in this court, it makes perfect sense that the inmate complaint would trigger the obligation to preserve any video footage, particularly when expressly requested by the inmate.").

Defendants assert that the minor discrepancies in Sanchez's grievances, as well as his request for medical care in his initial grievance, relieved Hays County of its duty to preserve any video footage of the incident—yet cite no authority in support of this position. Dkt. 97, at 5-7. Instead, Defendants point to Corporal Wardlow's doubtful (and self-serving) contention that Sanchez's initial grievance—which alleged that he was subjected to both a criminal act and a violation of his civil rights—was "not serious" and merely a "medical grievance" because Sanchez requested medical attention for the injuries he sustained because of the alleged assault. Dkt. 97, at 5-6; Dkt. 93-1, 68, 70. As explained further below, Wardlow's opinions with regard to Sanchez's grievance are not reasonable. *Infra* Part II.B.

Defendants' reliance on the minor errors to argue that they had no duty to preserve any evidence is especially unconvincing given that the information related to Sanchez's correct temporary cell number and the accurate date of the alleged assault (one day after that listed by Sanchez in his grievances) were within Defendants' possession and easily verifiable. Defendants' insistence on this point is further contradicted by Hays County's own 30(b)(6) witness, who testified that the allegations contained in both of Sanchez's grievances should have precipitated a formal investigation—indicating that a reasonable person in this situation would have preserved the video footage in anticipation of litigation. Dkt. 93-1, at 120;

*Disedare*, 2024 WL 1526699, at *1 (prisoner grievance sufficient to put defendants on notice of need to preserve evidence where prisoner grievance "alleged the Defendants violated his constitutional rights by exercising excessive force against him"); *Alston v. Bellerose*, No. 3:12-CV-00147 (CSH), 2016 WL 4098726, at *2 (D. Conn. July 28, 2016) ("Clearly, videotape of a physical altercation may be relevant to future litigation, especially inside the prison context."); *see also Micron,* 645 F.3d at 1320 (stating that the standard for whether a duty to preserve existed is reasonableness).

Based on the foregoing, the undersigned concludes that (1) Defendants had a duty to preserve the video evidence of the incident giving rise to his claim, (2) they failed to take reasonable steps to preserve this evidence, (3) the evidence cannot be restored or replaced through additional discovery, and (4) this loss of evidence prejudiced Sanchez. Fed. R. Civ. P. 37(e)(1).

## B.    Intent

Having reached the conclusion that Defendants breached their duty to preserve, and that Plaintiff was prejudiced by that breach, the undersigned must now determine whether Defendants acted with intent to deprive Sanchez of the evidence to trigger Rule 37(e)'s most severe sanctions. Under Rule 37(e), this Court may either order "measures no greater than necessary to cure the prejudice," or upon a finding of intent to deprive Sanchez of the video evidence, order a presumption that the evidence was unfavorable to Defendants, an adverse jury instruction, or entry of default judgment. Fed. R. Civ. P. 37(e). Here, Sanchez insists that Defendants' conduct was intentional, rather than just negligent. Dkt. 94, at 12-15. Defendants

respond that there is insufficient evidence of their intent to support imposing the sanctions authorized by Rule 37(e)(2). Dkt. 97, at 7-9.

Sanchez argues that the Court may infer the Defendants' intent to deprive him of the video footage based on: (1) the video footage, if favorable to Sanchez, being the strongest piece of evidence supporting Sanchez's claims; (2) Defendants' knowledge, in response to Sanchez's grievances, of a duty to preserve; (3) Defendants' preservation of other video of Sanchez from earlier in the day that portrays Sanchez negatively; and (4) the fact that a digital log demonstrates that two officers[3] viewed the video yet failed to preserve it. Dkt. 94, at 12-14. Defendants respond that there is no evidence that they acted in bad faith in allowing the video footage to be deleted in line with Hays County's data-retention policy. Dkt. 97, at 7-9.

Given that direct evidence of intent will rarely exist, courts may infer bad faith based on a "strong chain of circumstantial evidence." *Disedare*, 2024 WL 1526699, at *14 (quoting *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 801 (N.D. Tex. 2011)); *see also Jim S. Adler, P.C. v. McNeil Consultants, LLC*, No. 3:19-CV-2025-K-BN, 2023 WL 2699511, at *21 (N.D. Tex. Feb. 15, 2023) ("Bad faith may be inferred by evidence that a party has misrepresented the existence of documents or allowed the destruction of documents, and had explanations of spoliation that were not credible." (citations omitted)); *Lou v. Lopinto*, No. CV 21-80, 2022 WL 16685539, at *7 (E.D. La. Nov. 2, 2022) ("A court does have substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the

---

[3] One of those officers testified that she did not know how long video footage was preserved or how to preserve it. Dkt. 93-1, at 101.

witnesses in a particular case, and other factors given that direct evidence of intent rarely exists." (footnote omitted)). While the Fifth Circuit has stated that typically courts "do not draw an inference of bad faith when documents are destroyed under a routine policy," it also indicated that the case for finding bad faith is "stronger" where "the documents were destroyed after [defendant] had notice of their relevance to [plaintiff's] claim." *Russell v. Univ. of Texas of Permian Basin*, 234 F. App'x 195, 208 (5th Cir. 2007); *see also Disedare*, 2024 WL 1526699, at *12 ("While document destruction under a routine policy does not always imply bad faith, a party 'cannot blindly destroy documents and expect to be shielded by a seemingly innocuous document retention policy'" (citing *Lewy v. Remington Arms Co.*, 836 F.2d 1004, 1112 (8th Cir. 1988))).

As explained above, Defendants had notice of the relevance of the video footage to Sanchez's potential claims as evinced by his multiple grievances, and Corporal Wardlow's self-serving testimony that he did not believe the initial grievance to be serious is not objectively reasonable. *Disedare*, 2024 WL 1526699, at *13 (finding "evidence from which the Court may infer that Defendants acted with the intent to deprive Plaintiff of the lost [evidence]'s use in this litigation" where "Defendants offered only a self-serving declaration that the other cameras in the [area] 'would [not] have added any value' to the footage that they selectively preserved"); *Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 427 (W.D.N.Y. 2017) ("Of course, a court is not required to credit explanations for the loss of the relevant evidence that it finds incredible."). In fact, Corporal Wardlow's testimony suggested that the County's

policy was to not investigate any inmate grievance filed after the two-day statute of limitations imposed by the County—regardless of the seriousness of the allegations in the complaint. Dkt. 93-1, at 76-78.

Sanchez also presented evidence that two officers viewed the video footage the day after the incident, suggesting that the failure to preserve the evidence resulted from more than mere negligence but rather an "improper motive."[4] Dkt. 93-1, at 94-95; *see United States v. de Leon*, 627 F. Supp. 3d 682, 694 (W.D. Tex. 2022) (assessing government official's potential "improper motive" as relevant to failure to produce evidence for purposes of sanctions award for discovery abuses in criminal context); *cf. Disedare*, 2024 WL 1526699, at *12 ("[W]hen there is no evidence that a party viewed video footage prior to its erasure, courts are reluctant to find that party acted in bad faith.")

Moreover, as noted above, Defendants preserved other footage of Sanchez from just hours before the incident—footage that, as Sanchez points out, is unfavorable to him. Dkt. 94, at 11. While Defendants point out that the earlier footage of Sanchez was preserved due to the initiation of disciplinary proceedings against him, Dkt. 97, at 9, the selective preservation of evidence in response to alleged inmate misconduct as opposed to alleged officer misconduct nonetheless suggests bad faith. *See Miramontes v. Peraton, Inc.*, No. 3:21-CV-3019-B, 2023 WL 3855603, at *6 (N.D. Tex. June 6, 2023) ("[T]he selective preservation of relevant evidence in the face of

---

[4] During the hearing, Defendants stated that the officers who viewed the footage were looking for evidence related to a separate incident involving different inmates that occurred the same morning. Dkt. 143. Defendants have not presented any evidence on the record to support this representation.

imminent litigation can evince bad faith, even if destruction was pursuant to routine policy.").

Finally, the fact that the spoliation here involves the most important piece of evidence that could support Sanchez's claims—particularly in light of the qualified immunity defense raised in the individual officers' pending motion for summary judgment—also supports an inference of intent on the part of Defendants. *Moody*, 271 F. Supp. 3d at 431 (finding intent where "no question exists that the lost evidence was highly relevant—if not the most important objective evidence—to the determination of liability"). Based on all of these facts, the undersigned concludes that chain of circumstantial evidence here is strong enough to support a finding of Defendants' intent to deprive Sanchez of the video footage.

### C.    Remedy

Because Defendants acted with intent to deprive Sanchez of evidence relevant to this litigation, the Court may order any of the three remedies available under Rule 37(e)(2): either (A) a presumption that the evidence was unfavorable to Defendants, (B) an instruction to the jury that it may or must presume the information was unfavorable to the party, or (C) entry of default judgment. Fed. R. Civ. P. 37(e)(2). In his motion, Sanchez requests a presumption or adverse-inference instruction that the lost evidence was unfavorable to Defendants, as well as attorneys' fees and costs in association with bringing the motion. Dkt. 94, at 12-15.

Having considered the record and relevant law, the undersigned recommends that the District Judge instruct the jury that it may, but is not required to, presume

that the video footage was unfavorable to Defendants in order to best cure the prejudice caused to Sanchez by Defendants' intentional spoliation of the "most important objective evidence" regarding Plaintiffs' claims. *See Moody*, 271 F. Supp. 3d at 431. Such a remedy is typically granted in cases where, as here, courts have determined that defendants intentionally spoliated relevant evidence. *See, e.g., id.* at 432 ("[A]n adverse instruction appropriately addresses the evidentiary gap caused by defendants' loss of such material evidence."); *Wilmoth v. Murphy*, No. 5:16-CV-5244, 2019 WL 3728280, at *5 (W.D. Ark. Aug. 7, 2019).

## III.    RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **GRANT** the motion for sanctions, Dkt. 94, and order and adverse jury instruction as described above.

## IV.    WARNINGS

The parties may file objections to this report and recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after the party is served with a copy of the report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the report and, except upon grounds of plain error, shall bar the party from appellate review of

unobjected-to proposed factual findings and legal conclusions accepted by the District

. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass*

*v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED October 9, 2024.

_____

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE

14